IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ENERGY DEVELOPMENT CORPORATION,
a Virginia Corporation,

                Plaintiff,

v.                                                    CIVIL ACTION NO. 2:04-0862

CABOT OIL AND GAS CORPORATION,
a Delaware corporation, CABOT OIL AND
GAS MARKETING CORPORATION, a
Delaware corporation, CRANBERRY
PIPELINE CORPORATION, a Delaware
corporation, BIG SANDY GAS COMPANY,
a Delaware corporation, and CHESAPEAKE
APPALACHIA, LLC,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Cabot Defendants' Motion for Partial Summary Judgment or in the Alternative to Stay Proceedings Pending a Final Decision by the WVPSC. The Court had a hearing on November 27, 2006 that was attended by attorneys for Plaintiff, Energy Development Corp. and Defendants, Cabot Oil and Gas Corporation and Cabot Oil and Gas Marketing Corporation, Cranberry Pipeline Corporation and Big Sandy Gas Company (collectively the "Cabot Defendants"). The Court **GRANTS** the Motion to Stay the Proceedings Pending a Final Decision by the West Virginia Public Service Commission ("WVPSC"). Although the Court has the jurisdiction to decide the issues in the case, it will stay the proceeding under the primary jurisdiction doctrine, to protect the parties from inconsistent rulings. The Court **DENIES** the request for Summary Judgment. The petition before the WVPSC is related to, although substantially different

from, the claims before this Court. A determination by WVPSC will have an effect on the sufficiency of evidence for certain claims, either strengthening or weakening the claims. Summary Judgment would be premature at this time.

### *Statement of the Case*

Plaintiff Energy Development Corporation ("Plaintiff" or "EDC") and Defendant Cabot Oil and Gas Corporation ("Cabot") are in the business of producing natural gas. Cabot is also in the business of transporting natural gas. Cabot operated the Big Creek Pipeline, located near EDC's gas wells. Cabot did not allow EDC to use the Big Creek Pipeline in order to transport EDC gas from its wells to its customers. EDC claims the pipeline was public and Cabot could not restrict access to the pipeline; Cabot contends the pipeline is private.

After it was clear Cabot would not allow the transportation of EDC natural gas on the Big Creek Pipeline, EDC relied on the V-33 Pipeline. The V-33 Pipeline was located farther away and was owned by the Defendant Columbia Natural Reserves ("CNR") substituted by Chesapeake Appalachia, LLC ("Chesapeake") as a defendant in this matter. The V-33 Pipeline connected to Cabot's Cranberry Pipeline system for delivery, for which CNR had an "exchange agreement" with Cabot to use. Allegedly, once Cabot was made aware that EDC was using the Cranberry Pipeline through CNR, EDC was "shut out" of the line. It is further alleged that Cabot then offered to move EDC's gas for a price that was 85% of the index price, which EDC had no choice but to accept. Thereafter, a "compressor" on the Cranberry Pipeline, which was necessary to move EDC's gas, stopped operating. Cabot did not remedy the situation, instead Cabot moved the compressor to another pipeline.

from, the claims before this Court. A determination by WVPSC will have an effect on the sufficiency of evidence for certain claims, either strengthening or weakening the claims. Summary Judgment would be premature at this time.

### *Statement of the Case*

Plaintiff Energy Development Corporation ("Plaintiff" or "EDC") and Defendant Cabot Oil and Gas Corporation ("Cabot") are in the business of producing natural gas. Cabot is also in the business of transporting natural gas. Cabot operated the Big Creek Pipeline, located near EDC's gas wells. Cabot did not allow EDC to use the Big Creek Pipeline in order to transport EDC gas from its wells to its customers. EDC claims the pipeline was public and Cabot could not restrict access to the pipeline; Cabot contends the pipeline is private.

After it was clear Cabot would not allow the transportation of EDC natural gas on the Big Creek Pipeline, EDC relied on the V-33 Pipeline. The V-33 Pipeline was located farther away and was owned by the Defendant Columbia Natural Reserves ("CNR") substituted by Chesapeake Appalachia, LLC ("Chesapeake") as a defendant in this matter. The V-33 Pipeline connected to Cabot's Cranberry Pipeline system for delivery, for which CNR had an "exchange agreement" with Cabot to use. Allegedly, once Cabot was made aware that EDC was using the Cranberry Pipeline through CNR, EDC was "shut out" of the line. It is further alleged that Cabot then offered to move EDC's gas for a price that was 85% of the index price, which EDC had no choice but to accept. Thereafter, a "compressor" on the Cranberry Pipeline, which was necessary to move EDC's gas, stopped operating. Cabot did not remedy the situation, instead Cabot moved the compressor to another pipeline.

Plaintiff filed the action in the Circuit Court of Kanawha County, West Virginia on July 13, 2004. Plaintiff's claims include antitrust violations under West Virginia Antitrust Act, unjust enrichment, conversion, civil conspiracy, breach of contract against CNR and Cabot, business duress, and tortious interference. The case was removed to this Court on August 13, 2004. On September 2, 2004 Plaintiff filed a complaint in the WVPSC requesting a determination as to whether the Big Creek Pipeline was an intrastate or interstate pipeline and, if so, that Plaintiff be granted non-discriminatory access to the pipeline and Cabot be required to provide Plaintiff additional capacity at Cranberry and provide a point of entry into the Big Creek Pipeline. On September 7, 2005 the WPVSC Administrative Law Judge ("ALJ") VanDervort determined the Big Creek Pipeline is a intrastate pipeline, subject to the rules of WVPSC as a public utility. Exceptions were filed and the case is in the appeals process.

### *Standard of Review*

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256.

The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### *Summary Judgment: Exclusive Jurisdiction*

The first issue to address is whether the administrative proceeding must be exhausted before the Court has jurisdiction. Under the exhaustion of remedies doctrine if the administrative agency has exclusive jurisdiction to decide the matter, and the Court only has appellate jurisdiction to review the agency's determination, exhaustion is required. *State ex rel. Bell Atlantic-West Virginia v. Ranson*, 497 S.E.2d 755, 762 (W. Va. 1997).

> The general rule, established by many decisions of state and federal courts, is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act.

*Daurelle v. Traders Fed. Sav. & Loan Ass'n*, 104 S.E.2d 320, 326 (W. Va. 1958). WVPSC's jurisdiction is statutory and covers the transportation of natural gas. "The jurisdiction of the commission shall extend to all public utilities in this state and shall include any utility engaged in any of the following public services. . .transportation of oil, gas or water by pipeline." W. Va. Code § 24-2-1; *see also* W. Va. Code § 24-3-3a. A declaration of jurisdiction does not give the agency exclusive jurisdiction, especially in a case which is based on common law and anti-trust claims. *See Ranson*, 497 S.E.2d at 762-63.

Cabot Defendants argue that the determination of whether the Big Creek Pipeline is public or private, and therefore whether it can be governed by the WVPSC, is in the exclusive purview of the agency. If the only issue was whether Big Creek Pipeline was private or public, the argument might succeed. The claims in this case extend much further than whether the pipeline is governed

by WVPSC. The anti-trust violations alleged as well as the contract claims are subject matters over which the courts generally have jurisdiction, not agencies. As evidence of the parallel areas of law that are being decided by the WVPSC, Cabot Defendants list all of the claims that would not be viable if the ALJ's decision is reversed. The fact that the claims are connected to a determination is not dispositive of whether the WVPSC's decision is exclusive. As in *Ranson* the Court finds the jurisdiction is concurrent since the claims at issue are usually in the purview of this Court. *See Ranson*, 497 S.E.2d at 763. The Court finds WVPSC does not have exclusive jurisdiction in this case. The claims are not dismissed based on exhaustion and Summary Judgment is denied.

### *Motion to Stay Proceeding: Primary Jurisdiction*

The next issue presented is whether the Court should stay the action until the WVPSC renders a final decision. The Court should stay the proceeding where the agency has primary jurisdiction. There is "no fixed formula" for determining whether to apply the doctrine of primary jurisdiction although "[i]n every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64 (1956); *Advamtel, L.L.C. v. Sprint Communs. Co. L.P.*, 125 F. Supp. 2d 800, 804 (D. Va. 2001). This determination focuses on the relationship between the Court and the administrative agency.

> The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been

> placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*Western P. R. Co.*, 352 U.S. at 63-64. The determination of whether to stay the proceeding is not a disposition of the case, but a delay so that the case, when returned to the Court, will be in better form for a final decision. "[T]he Court neither passes off final decision on [] another tribunal nor escapes from its ultimate duty to decide. For after the exercise of primary jurisdiction determination by the agency concerned, the case comes back in a suitable way for the Court, as a Court, to act." *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224, 241 (5th Cir. 1976). A determination by WVPSC will place any future decisions by the Court on stronger footing than if each proceeding were left to wander parallel paths with the possibility of very different ends.

To determine whether WVPSC has primary jurisdiction, there are four factors to consider. First, whether the issue is within the conventional experience of the judiciary. Second, whether the disposition of the issue is dependant on a subject matter that requires the agency's specialized expertise. Third, whether there is a danger of inconsistent rulings between the agency and the Court. Lastly, the Court looks to whether a prior application to the agency has been made. *See Ranson*, 497 S.E.2d at 764.

The issue of whether the pipeline is public or private and therefore whether the actions allegedly taken by Defendants constitute anti-trust violations appear to be in the category of issues the Court is able to determine. *See Wilhite v. Public Serv. Comm'n*, 149 S.E.2d 273, 281 (W. Va. 1966) (Determining that the utility was public and reversing the agency's determination that the utility company was private). The determination of whether a utility is public or private does not appear to involve any specialized expertise from WVPSC since it is basically a factual

determination. Cabot Defendants agree that the Court is equipped to make factual determinations but this is not an issue that "is normally decided by the Court, particularly when the identical issue is pending before the WVSPC." (Defs.' Reply 6). Although it appears clear that the determination does not require specialized agency expertise, the Court does understand WVSPC has more experience in making this specific determination.

The possible danger of inconsistent rulings by WVPSC and the Court does cause concern. Cabot Defendants argue that the claims in the WVPSC and this Court are too intertwined to allow both to move forward. Further, as noted at the hearing, if there are inconsistent rulings this could affect future claims against Defendants. It would be unclear which decision would have authority in the regulated industry. "[A]ny judgment entered in this case has the potential to undermine the [agency's] efforts to resolve this matter through its administrative mechanisms and to create conflicting interpretations of the Act's requirements. It is only through referral that a consistent, uniform result is assured." *Advamtel, L.L.C.*, 125 F. Supp. 2d at 805. The Court is concerned with this very situation and finds that the danger of inconsistent rulings is too great to continue this case while the WVSPC is deciding the issue of whether the pipeline is public or private.

The Court finds that the sequence of events in this case does not override the determination that WVPSC has primary jurisdiction. The fact that the case before this Court was filed before the petition in WVPSC rather than after, as indicated in the fourth factor under *Ranson*, is immaterial.

The determination of the WVPSC will relate to many issues in the case; therefore, it is in the best interest of all parties to the litigation to stay the entire case to await the determination by WVPSC. As requested by Plaintiff, the Court will schedule a status conference on March 5, 2007

at 10:30 a.m. Further, the parties are directed to notify the Court when the WVPSC renders a decision.

### *Conclusion*

For the aforementioned reasons the Court **DENIES** Cabot Defendants' Motion for Partial Summary Judgment and **GRANTS** the request to Stay Proceedings Pending a Final Decision by the WVPSC. The entire case will be stayed to await the determination by WVPSC. The Court **ORDERS** the parties to notify the Court of the decision of the WVPSC. A status conference is scheduled for March 5, 2007 at 10:30 a.m.

The Court **DIRECTS** the Clerk to send a copy of this Order to all counsel of record and any unrepresented parties.

ENTER: November 30, 2006

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE